2022 UT App 128

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF D.G.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

V.G.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20210836-CA
Filed November 17, 2022

Third District Juvenile Court, Tooele Department
The Honorable Elizabeth M. Knight
No. 1173613

K. Andrew Fitzgerald, Attorney for Appellant

Sean D. Reyes, John M. Peterson, and Candace
Roach, Attorneys for Appellee

Amy L. Williamson, Guardian ad Litem

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES RYAN M. HARRIS and RYAN D. TENNEY
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1      D.G. (Child) was removed from his mother's (Mother) home as a result of Mother's habitual drug use, and after reunification efforts proved unsuccessful, the juvenile court terminated Mother's parental rights. On appeal, we have been asked to consider whether the juvenile court erred in concluding that termination was strictly necessary and in Child's best interest and whether Mother's counsel was ineffective for failing to seek accommodations for her under the Americans with Disabilities

Act (the ADA). Because we previously rejected Mother's strictly-necessary argument on the merits, relying on the arguments made in her petition on appeal, we do not consider that argument further and grant the State's motion to strike the portions of Mother's brief addressing that issue. Further, we reject Mother's ineffective assistance of counsel claim on the basis that she cannot establish that she was prejudiced by any deficient performance.

BACKGROUND

¶2 Mother first encountered the child welfare system when Child was removed from her care at birth after being exposed to drugs in utero and suffering withdrawal. In an effort to be reunited with Child, Mother participated in reunification services and began inpatient treatment at a treatment facility. When Child was nearly six months old, and based upon Mother's compliance with the Child and Family Service Plan (Service Plan) adopted by the juvenile court, the court allowed a trial home placement with Mother at the treatment facility while she continued to participate in services. By the time Child was eighteen months old, he was returned to Mother's custody. However, Mother soon began to "struggle" by resuming her drug use, stopping her prescribed medication, losing her job, missing therapy appointments, and refusing to drug test. A little more than four months after being returned to Mother's custody, Child was again removed from her care and placed in a foster home. Following a permanency hearing, the juvenile court terminated reunification services and changed Child's permanency goal to adoption. Subsequently, the juvenile court terminated Mother's parental rights to allow Child to be adopted by his foster family.

¶3 Mother appealed the juvenile court's termination order, raising two issues for our review: (1) that the juvenile court erred in determining that it was strictly necessary to terminate Mother's rights without considering an alternative placement with Child's biological father and (2) that her trial counsel was ineffective for failing to seek accommodations for her under the ADA. After

reviewing Mother's petition, we issued an Expedited Briefing Order and Notice of Hearing (the Briefing Order) requesting full briefing only as to Mother's second appellate issue. As to the first issue, we rejected Mother's argument, explaining,

> [T]here is nothing in the record that indicates a paternity determination. Caseworker testified at trial that paternity had not been established and that the man who initially came forward was not the father. In the termination order, the juvenile court found that paternity had not been established. There is nothing in the record that shows that finding is clearly erroneous.

¶4 Despite this court's Briefing Order limiting full appellate briefing to only Mother's second stated issue, Mother filed a brief addressing both issues for our consideration. In response, the State requested that we strike the portion of Mother's brief addressing the strictly-necessary issue because it did not comply with the Briefing Order and also because the Briefing Order had already resolved that issue on the merits. Mother opposed the State's motion, arguing that the supreme court's ruling in *In re J.A.L.*, 2022 UT 12, 506 P.3d 606, issued three weeks after the Briefing Order, gave rise to exceptional circumstances because it changed "the interpretation of the law . . . while her appeal was pending." We deferred ruling on the motion to strike "pending plenary consideration of the appeal by this court."

ISSUES AND STANDARDS OF REVIEW

¶5 First, we must address the issue raised in the State's motion to strike. We consider such a motion, made first and relevant only on appeal, in the first instance. *See Aurora Credit Services, Inc. v. Liberty West Dev., Inc.*, 2007 UT App 327, ¶ 7, 171 P.3d 465. Because we ultimately grant the State's motion, we do not reconsider the merits of Mother's argument concerning the juvenile court's consideration of the strictly-necessary requirement.

¶6     Second, we address Mother's argument that she received ineffective assistance of counsel. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *In re S.S.*, 2015 UT App 230, ¶ 20, 360 P.3d 16 (quotation simplified).


ANALYSIS

I. Motion to Strike

¶7     In child welfare proceedings, the appellant is required to file a "petition on appeal" that outlines the nature of the case, the relief sought, relevant dates, a concise statement of facts, a statement of the legal issues presented, the applicable standard of review, and supporting legal authority and argument for each issue raised. Utah R. App. P. 55(a), (d). While such petitions are not intended to be full appellate briefs, they do set the parameters of the issues presented for appeal. Parties are required to address the merits of their appellate arguments, and petitions should be "designed to zealously advocate the positions of the parties and to assist the court in resolving the matter." *In re J.F.*, 2014 UT App 82, ¶ 11, 327 P.3d 26 (quotation simplified). In drafting their petitions, parties in child welfare proceedings should err on the side of inclusiveness because our rules allow us to make a substantive ruling on the merits of a party's appellate arguments or order further briefing on the issues presented after reviewing only the way those arguments are framed in a petition.[1] *See* Utah R. App. P. 58(a)–(b) (stating that "[a]fter reviewing the petition on appeal, any response, and the record, the Court of Appeals may rule by opinion, memorandum decision, or order" or, alternatively, the court may "set the case for full briefing" and

---

1. In this important way, petitions filed in child welfare appeals are different from docketing statements filed in other appeals. *See generally* Utah R. App. P. 9. Nothing in our rules allows us to make substantive rulings on a party's appellate arguments after reviewing only a docketing statement.

"specify which issues must be briefed"). A party who disagrees with the court's ruling following review of a petition may not seek further review on the basis of the court's refusal to grant full briefing. *Id.* R. 58(b). However, a party may file a petition for rehearing on the merits of the court's decision, *id.*; *id.* R. 35, or petition the supreme court for a writ of certiorari, *id.* R. 45(a).

¶8     Here, our Briefing Order resolved the merits of Mother's argument regarding the juvenile court's application of the strictly-necessary standard and directed Mother to further address only the ineffective assistance of counsel issue raised in her petition. Our rules do not allow Mother to seek rehearing on our decision not to order full briefing on the strictly-necessary issue raised in her petition, *see id.* R. 58(b), and she did not seek the court's permission to file any supplemental briefing on that issue on the basis that the law had changed after she filed her petition. Mother simply addressed the issue in her appellate brief. This was improper, and regardless of the grounds presented, Mother's briefing of the strictly-necessary issue violated our Briefing Order. We therefore grant the State's motion to strike that portion of the brief. Mother's remedy, should she disagree with our ruling, is to file a petition for rehearing[2] or to petition the supreme court for certiorari.

---

2. For those readers who may register some dissatisfaction with our resolution of this issue on what may appear to be a technicality of appellate procedure, we offer our observation—informed by our review of Mother's briefing—that even if Mother had sought permission to file supplemental briefing, we would have been disinclined to grant Mother any relief. We are unpersuaded by Mother's assertion that the supreme court's ruling in *In re J.A.L.*, 2022 UT 12, 506 P.3d 606, should change the analysis set forth in our Briefing Order. *In re J.A.L.* stands for the proposition that a juvenile court cannot find termination strictly necessary based on "the categorical concern that a permanent

(continued…)

## II. Ineffective Assistance of Counsel

¶9 We now turn to the single question on appeal on which we requested full briefing. Mother argues that she received ineffective assistance of counsel because her attorney did not request that she receive accommodations under the ADA, which she claims would have enabled her to better access services to regain custody of Child. To establish her ineffective assistance of counsel claim, Mother "must show that counsel's performance

---

guardianship is not as stable or permanent as an adoption." *Id.* ¶ 25. But here, the juvenile court was not presented with any feasible option for a guardianship placement. The only potential placements Mother suggested on appeal were with the adoptive parents of Child's half-siblings or with Child's alleged biological father. But there is nothing in the record indicating that Child has a relationship with his half-siblings or their adoptive parents or that his siblings' adoptive parents would be willing to also act as Child's guardians. Further, it is undisputed that Child's paternity had not been established. And there is no other option, short of termination and adoption, that would have otherwise been apparent to the juvenile court. *See generally In re J.J.W.*, 2022 UT App 116, ¶ 19 ("[I]n some instances (e.g., where the existence of a particular option would not be readily apparent to the court), a parent may need to expressly ask a trial court to consider a specific non-termination option in order to properly preserve the right to argue, on appeal, that the court did not adequately consider that option."). The court observed that "Mother has very little family support and her grandfather, who is her closest relative, lives in [a town] . . . that is a trigger for her to use drugs." Thus, even assuming that the juvenile court's analysis of the strictly-necessary question could have or even should have been more robust, without any remotely feasible alternatives to termination and adoption, Mother cannot show that the juvenile court's finding that termination of Mother's rights was strictly necessary was against the clear weight of the evidence.

was objectively deficient and that counsel's deficient performance prejudiced the case." *See In re S.S.*, 2015 UT App 230, ¶ 22, 360 P.3d 16 (quotation simplified). To accomplish this, she must point "to specific instances in the record demonstrating both counsel's deficient performance and the prejudice it caused" her. *See State v. Griffin*, 2015 UT 18, ¶ 16, 441 P.3d 1166.

¶10    To establish prejudice, Mother would need to "proffer sufficient evidence to support a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See In re S.H.*, 2007 UT App 8, ¶ 12, 155 P.3d 109 (quotation simplified). In the context of this case, such evidence would need to support a reasonable probability that Mother's invocation of the ADA here would have led to modifications to the Service Plan intended to accommodate her disability, that those accommodations would have better allowed her to access needed services, and that better access to services would have prevented the termination of her parental rights. To persuade us that counsel's failure to invoke the ADA changed the outcome of this case, Mother must present record evidence that demonstrates that (1) Mother is disabled; (2) because of Mother's disability, she is entitled to particular accommodations to allow her to access services; (3) had Mother received such accommodations, she would have accessed the provided reunification services; and (4) the reunification services would have enabled Mother to successfully complete the Service Plan and avoid having her rights terminated. *See In re K.T.*, 2015 UT 92, ¶¶ 22–28, 362 P.3d 1248.

¶11    Mother points to evidence in the record indicating that she did not receive a psychological evaluation and that one of her therapists opined that she "wondered if [Mother] was on the autism spectrum." Mother also asserts that the record indicates that her "mental health" problems had a "substantial impact . . . on her life's activities" and that all parties involved were aware that she suffered from "significant mental health problems." (Quotation simplified.) However, because Mother never received a psychological evaluation, there is no evidence in the record

diagnosing her with any specific disability or indicating how any such disability impacted her life, and Mother has made no effort to supplement the record with any such evidence.[3] *See In re C.M.R.*, 2020 UT App 114, ¶¶ 29–32, 473 P.3d 184. *See generally State v. Litherland*, 2000 UT 76, ¶ 16, 12 P.3d 92 (explaining that the individual asserting ineffective assistance of counsel "bears the burden of assuring the record is adequate" and that if the record is inadequate that individual also "bears the primary obligation and burden of moving for a temporary remand"). Essentially, Mother asks us to assume that had she received a psychological evaluation, it would have identified a specific disability that could be accommodated under the ADA and that it is reasonably probable that such accommodations would have changed the outcome of the termination trial. But we are not in a position to make such assumptions, and in fact, in the absence of specific evidence to the contrary, we must assume that counsel performed effectively. *See Litherland*, 2000 UT App 76, ¶ 16.

¶12 Without evidence indicating what a psychological evaluation would have concluded, what disability Mother had, what accommodations Mother needed, and how those accommodations might have helped her to more successfully participate in reunification services, she cannot show that she suffered prejudice as a result of counsel's allegedly deficient performance in failing to request a psychological evaluation and accommodations under the ADA. Accordingly, she has not

---

3. Mother asserts that had counsel performed effectively, he would have ensured that she receive a psychological evaluation. However, we have procedures available for an appellant to request remand to supplement the record, which are designed to address the problem that "the insufficient record may often be the result of the very inadequate assistance alleged." *Cf. State v. Griffin*, 2015 UT 18, ¶ 16, 441 P.3d 1166. Where Mother has not requested such a remand, we can consider only the evidence before us in assessing her ineffective assistance of counsel claim. *See In re D.R.*, 2022 UT 124, ¶ 18.

carried her burden of establishing that she received ineffective assistance of counsel.

CONCLUSION

¶13    Because we did not order full briefing on the strictly-necessary issue and instead rejected Mother's arguments regarding that issue on the merits on the basis of her petition on appeal, we grant the State's motion to strike with respect to the portions of Mother's brief that addressed the strictly-necessary issue. As to the merits of the issue that we asked Mother to brief, we conclude that she cannot establish that she received ineffective assistance of counsel, because the record before us is insufficient to establish that she suffered prejudice as a result of her counsel's allegedly deficient performance. Accordingly, we affirm the juvenile court's order.

_____