2007 UT App 8

**STATE of Utah, in the interest of S.H., a person under eighteen years of age.**

**S.H., Appellant,**

v.

**State of Utah, Appellee.**

**No. 20060161–CA.**

Court of Appeals of Utah.

Jan. 5, 2007.

David O. Drake, Midvale, and Sara Pfrommer, Park City, for Appellant.

Mark L. Shurtleff, atty. gen., Carol L.C. Verdoia, John M. Peterson, asst. attys. gen., and Russell Y. Minas, Russell Y. Minas, PC, Salt Lake City, for Appellee.

Martha Pierce and Candace Coy–Dymek, Salt Lake City, Guardians Ad Litem.

Before BENCH, P.J., BILLINGS and DAVIS, JJ.

OPINION

BILLINGS, Judge:

¶ 1 Mother appeals from a juvenile court child welfare order granting permanent custody of her son (S.H.) to Father. At a November 2, 2005 adjudication hearing, the juvenile court found that Mother had neglected S.H. At the January 3, 2006 disposition hearing, the juvenile court terminated Mother's custody of S.H. and granted Father's petition for permanent custody. We remand for an evidentiary hearing regarding Mother's claim of ineffective assistance of counsel.

BACKGROUND

¶ 2 S.H. was born on July 24, 2001. On July 30, 2005, when S.H. was four-years old, Mother went with S.H. to the emergency room at LDS Hospital because Mother was having hallucinations and depression with psychotic features. Mother was later involuntarily admitted to the University of Utah Neuropsychiatric Institute (UNI) for treatment. At the time, Mother told a caseworker for the Division of Child and Family Services (DCFS) that she had no family or friends who could care for S.H. while she was hospitalized. Mother explained to a DCFS caseworker that she and Father were divorced and that he was in the military, stationed at Fort Polk, Louisiana. Mother also told the caseworker that she and S.H. came to Utah to escape Father because he was allegedly violent with her. Mother voluntarily placed the child in protective custody.

¶ 3 On July 29, 2005, the day prior to Mother's psychotic episode, Mother contacted the Salt Lake City Police Department to report a threat. Later that day, she called again to complain that no one had responded to her earlier report. Following Mother's second call, a police officer went to Mother's

home, but Mother refused to answer the door. Mother eventually told the officer that she believed her phone lines were tapped and that her home was under surveillance. Mother also told the officer that she heard a voice telling her not to go home because someone was trying to kill her. The officer inspected the home and found the butt of a loaded handgun sticking out of Mother's jacket and an additional loaded handgun in Mother's other pocket. He also found S.H. sleeping on Mother's bed. On the dresser in the room where S.H. was sleeping, the officer found a third handgun. Mother disputes the officer's testimony that two more loaded handguns were on Mother's bed with S.H. The officer felt S.H. was fine, so he advised Mother to lock up her guns and then left the home.

¶ 4 On August 3, 2005, Mother was discharged from UNI with a diagnosis of alcoholic hallucinations and alcohol dependence. Mother's prognosis was good for the short-term and fair for the long-term if she returned to substance abuse. During the first part of August 2005, the State filed a petition alleging the above-detailed events that led to the removal of S.H. and seeking ongoing jurisdiction on the basis of neglect and dependency. The State later amended its petition (First Amended Petition).

¶ 5 On August 16, 2005, a pretrial hearing was held. Mother was present at that hearing and directed her attorney to deny certain allegations in the State's First Amended Petition. Specifically, Mother denied that on July 29, 2005, she told the officer that she had been drinking earlier that day; she also denied that she had two loaded handguns on the bed where S.H. was sleeping. The juvenile court failed to find that Mother neglected S.H., but held over the State's petition for a further pretrial hearing on Mother's alcohol use. Also on August 16, 2005, Father filed a petition for permanent custody.

¶ 6 On October 6, 2005, at another pretrial hearing, the juvenile court noted that the State had again amended its petition (Second Amended Petition) and that the Second

Amended Petition alleged Mother had a chronic alcohol problem. Recognizing that this new allegation had not been addressed, the court set a November 2, 2005 trial date for adjudication of the State's Second Amended Petition. The court also granted temporary custody of S.H. to Father.

¶ 7 On October 17, 2005, Mother claims to have met with her attorney's paralegal and asked the paralegal to tell her attorney to request another continuance of the November 2, 2005 adjudication hearing. Mother told the paralegal that she felt she needed to check herself into the Highland Ridge Hospital for further treatment, but that she wanted to attend the adjudication hearing. Mother's attorney allegedly told Mother that he would get a continuance and that she could check herself into the hospital. Mother's attorney, however, never sought the continuance and proceeded with the adjudication hearing on November 2, 2005, without Mother's presence and without Mother's consent.

¶ 8 At the November 2, 2005 adjudication hearing, Mother's attorney changed Mother's denials to admissions and only denied the allegation that on the night the officer came to Mother's home, there were loaded guns on Mother's bed while S.H. slept. He further admitted to the new allegations in the State's Second Amended Petition, including the allegations that Mother had been drinking heavily for four months. At the conclusion of this hearing, the juvenile court found that Mother had neglected S.H. and continued S.H.'s temporary placement with Father.

¶ 9 At the disposition hearing on January 3, 2006, the juvenile court found the allegations in Father's petition for permanent custody to be almost identical to the allegations in the State's Second Amended Petition and determined that those allegations need not be retried. The juvenile court also determined that it did not need to establish a reunification plan for Mother because Father was a fit parent. The juvenile court granted permanent custody to Father. Mother appeals.[1]

---

1. Both Father and the Guardian Ad Litem argue that Mother's appeal is untimely because she did not appeal the juvenile court's findings at the

adjudication hearing within fifteen days. *See* Utah R. App P. 52(a). However, the State concedes jurisdiction, noting that a timely appeal

## ISSUES AND STANDARDS OF REVIEW

¶ 10 On appeal, Mother claims that her due process rights were violated when, at the adjudication hearing, her counsel stipulated to all but one of the allegations in the State's Second Amended Petition without Mother being present and without her consent. However, we conclude that this issue is best addressed as a claim for ineffective assistance of counsel, as her attorney was acting as her agent. "An ineffective assistance of counsel claim presents a question of law that is ... reviewed for correctness." *State v. Smith*, 2005 UT 57, ¶ 6, 122 P.3d 615.

¶ 11 Mother also raises issues that her due process rights were violated because she was not provided adequate notice as to the purpose of the disposition hearing, that the juvenile court erred when it refused to hold a permanency hearing prior to terminating the court's jurisdiction, and that there is insufficient evidence to support the juvenile court's permanency order. We decline to address these claims and instead conclude that Mother is entitled to an evidentiary hearing on her threshold ineffective assistance of counsel claim. We therefore remand. Also, because Mother's ineffective assistance of counsel claim is potentially dispositive, we do not address the additional issues raised on appeal.[2]

## ANALYSIS

¶ 12 Mother argues that she received ineffective assistance of counsel at the adjudication hearing when her attorney stipulated to all but one of the allegations in the State's Second Amended Petition and proceeded at the hearing without Mother present, even though she had expressed a desire to attend. "To successfully challenge a claim of ineffective assistance of counsel, ... [Mother] must show that counsel's performance was objectively deficient and that coun-

sel's deficient performance prejudiced the case." *In re E.H.*, 880 P.2d 11, 13 (Utah Ct.App.1994) (adopting the test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). A demonstration of prejudice requires Mother to "proffer sufficient evidence to support a reasonable probability that, but for ... counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Arguelles*, 921 P.2d 439, 441 (Utah 1996) (quotations and citation omitted). Moreover, "proof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality." *Fernandez v. Cook*, 870 P.2d 870, 877 (Utah 1993).

¶ 13 Mother asserts that her counsel's performance at the adjudication hearing prejudiced her because he failed to adequately represent her interests. Specifically, Mother argues that her attorney (1) failed to request a continuance after assuring her that the hearing would be continued and declined to inform her that the hearing had in fact not been continued; (2) failed to inform the court of Mother's desire to be present at the hearing, although Mother was unable to attend that day, and instead represented to the court that Mother had given him permission to proceed; and (3) erroneously informed the juvenile court that Mother had agreed to admit all but one of the allegations in the State's Second Amended Petition.

¶ 14 Unfortunately, there is little or no record evidence supporting Mother's allegations. The facts regarding Mother's request that her attorney continue the adjudication hearing and her desire to attend that hearing are asserted in Mother's sworn declaration attached to her rule 59(e) motion to alter or amend the juvenile court's permanency order entered on January 24, 2006. *See* Utah R. Civ. P. 59(e). This declaration was uncontested and is part of the record on appeal.

---

from the disposition hearing entitles the appellant to also raise issues from the adjudication hearing. *See In re S.A.K.*, 2003 UT App 87, ¶ 15, 67 P.3d 1037. Mother timely appealed the January 3, 2003 disposition hearing and therefore this court has jurisdiction over Mother's claims arising from the adjudication hearing as well.

2. While we do not address Mother's legal arguments concerning the January 3, 2006 disposition hearing, a finding of ineffective assistance of counsel would necessarily require the court to vacate both the November 2, 2005 adjudication hearing's finding of neglect and the January 3, 2006 disposition hearing's award of permanent custody to Father.

¶ 15 However, Mother's allegations that her attorney made certain unauthorized admissions at the adjudication hearing are absent from the record. Mother claims she was unaware of her attorney's conduct at the adjudication hearing until she received a copy of the transcript for purposes of this appeal. Upon learning of her attorney's unauthorized admissions, Mother filed an affidavit regarding ineffective assistance of counsel in conjunction with her petition for appeal. However, "we do not consider new evidence on appeal." *Low v. Bonacci*, 788 P.2d 512, 513 (Utah 1990); *see also* Utah R.App. P. 11(a) (detailing the composition of the record on appeal). Mother then motioned to supplement the record or remand to the juvenile court for further findings regarding ineffective assistance of counsel. We denied that motion on July 12, 2006, because a rule 23B remand is limited to criminal cases. *See* Utah R.App. P. 23B(a). After allegedly discovering what transpired at the November 2, 2005 adjudication hearing, Mother unsuccessfully exhausted all of her alternatives for providing this court with record evidence supporting her ineffective assistance of counsel claim.

¶ 16 Still, the procedural rules for child welfare appeals clearly contemplate claims for ineffective assistance of counsel. *See* Utah R.App. P. 55(b); *see also In re E.H.*, 880 P.2d 11, 13 (Utah Ct.App.1994) (holding that in parental termination proceedings, the parent is "entitled to effective assistance of counsel"). By not allowing Mother to submit record evidence regarding her ineffective assistance of counsel claim, we would effectively deny Mother's right to raise that claim. Therefore, we remand to the juvenile court for an evidentiary hearing and direct the juvenile court to make factual findings regarding Mother's ineffective assistance of counsel claim.

¶ 17 Moreover, while we do not conclude that Mother's counsel was ineffective, we note that should the juvenile court find that Mother's counsel failed to request a continuance of the November 2, 2005 adjudication hearing, that he proceeded at the adjudication hearing without Mother present even though she had expressed her desire to attend and testify, and that he made unauthorized admissions to the State's Second Amended Petition, then such failures may well require a rehearing of the adjudication hearing and the disposition hearing.

¶ 18 Both the State and the Guardian Ad Litem acknowledged that a finding of Mother's alcohol abuse was "imperative for the dispositional recommendations." Because Mother denied making any statement regarding alcohol use to the police officer, the State asked the juvenile court to set over the State's petition for a further pretrial hearing on that issue.

¶ 19 During the November 2, 2005 adjudication hearing, Mother's counsel changed Mother's denial regarding her statement to the police officer that she had been drinking before calling law enforcement to an admission. Mother's counsel further admitted certain new allegations that the State added to its Second Amended Petition. Specifically, Mother's counsel admitted that Mother told medical personnel at UNI that she had been drinking heavily for four months following her husband's death. Counsel also admitted that Mother was discharged from UNI on August 3, 2005, with a diagnosis of alcoholic hallucinosis, alcohol abuse, and alcohol-induced anemia and thrombocytopenia.

¶ 20 After Mother's attorney admitted to Mother's heavy alcohol consumption for a four-month period, the juvenile court found that Mother "consume[d] alcohol to the point where ... it interfered with her ability to safely make good decisions on the part of her child [and to] properly care for her son." The court then determined that Mother neglected S.H. It is clear that Mother's alleged alcohol abuse was a major factor in the juvenile court's finding of neglect. Therefore, if Mother's allegations are true, then she was prejudiced by her counsel's admission of heavy alcohol abuse.

¶ 21 Mother also allegedly expressed to her attorney her desire to attend the adjudication hearing, to testify on her behalf, and to present mitigating evidence. Mother was unable to present evidence of the circumstances leading up to the State taking custody of S.H., as well as evidence that she was the one who sought help and took appro-

priate measures to ensure S.H.'s safety while she obtained the help that she felt she needed. While there is no certainty that such evidence and testimony would have changed the juvenile court's finding of neglect, it is well-settled that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quotations and citation omitted). In the context of parental rights, "[d]ue process requires that a parent be given a meaningful opportunity to be heard by submitting testimony herself and by witnesses." *In re W.S.,* 939 P.2d 196, 202 (Utah Ct.App.1997) (quotations and citation omitted).

## CONCLUSION

¶ 22 In her child welfare appeal, Mother is entitled to raise a claim for ineffective assistance of counsel. See Utah R.App. P. 55(b). To give effect to this claim, we remand to the juvenile court for an evidentiary hearing regarding Mother's allegations of ineffective assistance of counsel.

¶ 23 WE CONCUR: RUSSELL W. BENCH, Presiding Judge and JAMES Z. DAVIS, Judge.