2020 UT App 114

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF
C.M.R., B.T.R., P.J.R., F.S., AND O.S.,
PERSONS UNDER EIGHTEEN YEARS OF AGE.

C.S.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20190808-CA
Filed August 6, 2020

Sixth District Juvenile Court, Manti Department
The Honorable Brody Keisel
No. 1097000

Emily Adams, Freyja Johnson, and Cherise M.
Bacalski, Attorneys for Appellant

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Appellee

Martha Pierce, Guardian ad Litem

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and RYAN M. HARRIS
concurred, with opinions.

CHRISTIANSEN FORSTER, Judge:

¶1    C.S. (Mother) appeals the juvenile court's order adjudicating abuse, neglect, and dependency. Mother argues that the court erred in concluding that she abused her children without also making an express finding of harm. Alternatively, Mother asserts that her counsel (Trial Counsel) rendered ineffective assistance in advising her to enter admissions to the

petition without adequate investigation. We affirm in part and remand for a limited evidentiary hearing.

BACKGROUND

¶2    The Division of Child and Family Services (DCFS) filed a petition in July 2019 seeking protective supervision of Mother's five children (collectively, the Children). Based on information DCFS received from several referents, the petition alleged that the Children were abused, neglected, and dependent. Specifically, the petition asserted that Mother did not provide the Children with adequate nutrition and supervision; the Children lived in an unsanitary and unsafe home; Mother punished the Children with a hammer, fork, belt, and stick; Mother was unwilling to work with DCFS to address her lack of parenting skills, which exacerbated the Children's behavioral issues and led to contentious and inconsistent visitation; and finally, Mother had recently been arrested. With regard to one child, the petition alleged that, while in the waiting room of a family counseling center, a witness observed,

> Mother grabbed [the child] by the back-collar area of his shirt in such a manner that it restricted his ability to breathe and caused him to choke. Mother shoved his face into the corner with force and told him he needed to think about what he had done. [The child] told Mother he was having difficulty breathing and that Mother was hurting him. Despite [the child's] statements Mother did not let up on his shirt or the forcing of his face into the corner.[1]

---

1. The record contains no identifying information about this witness or information that explains why the witness did not intervene during the encounter between Mother and the child.

¶3 The juvenile court appointed Trial Counsel to represent Mother, and the parties reached a mediated agreement in response to the petition.[2] At the adjudication hearing held by the court following mediation, the State indicated that Mother would enter a plea responding to the allegations in the petition pursuant to rule 34(e) of the Utah Rules of Juvenile Procedure. *See* Utah R. Juv. P. 34(e) ("A respondent may answer by admitting or denying the specific allegations of the petition, or by declining to admit or deny the allegations. Allegations not specifically denied by a respondent shall be deemed true.").

¶4 The juvenile court explained that under rule 34(e), a parent who does not specifically deny the State's allegations essentially enters a "no-contest" plea in which that parent neither admits nor denies an allegation, but such an answer under the rule is treated "as if it were an admission." The court further explained that each parent enjoyed "the right to deny the allegations," in which case the matter would go to trial and the State would bear "the burden of proving the allegations in the . . . petition by . . . clear and convincing evidence." Mother stated that she understood the consequences of not specifically denying the allegations in the petition under rule 34(e), namely, that she would be giving up her right to contest the allegations contained in the petition and that her right to appeal would be limited. Mother further explicitly confirmed that she was not under the influence of any drugs, alcohol, or medication during the hearing; that she was thinking clearly; and that she had not been forced, threatened, or promised anything to respond in a particular way to the allegations in the petition.

¶5 The juvenile court also asked Mother if she understood that by not denying the allegations under rule 34(e), she gave the court "authority to enter orders that would affect [her]. This could include orders for custody, visitation, child support,

---

2. In addition to Mother, the two fathers of four of the Children were also involved in the mediation.

treatment requirements and parental rights." The court informed Mother that if she "wanted more time" to ponder her decision, it would "be happy" to accommodate her. Mother assured the court that she was ready to proceed, and she invoked rule 34(e) with respect to the paragraphs of the petition that detailed the abuse and neglect suffered by the Children. The court then accepted Mother's rule 34(e) admissions.

¶6     After a recess, the court reconvened. Mother and Trial Counsel immediately informed the court that there was an apparent conflict stemming from Trial Counsel's representation of Mother's former brother-in-law in a different case. Mother made a motion to withdraw her rule 34(e) admissions and set the matter for trial. The State opposed the motion. The guardian ad litem also opposed withdrawal, pointing out that by conducting an extensive "colloquy of rights," the court ensured that Mother had made "a very knowing and voluntary admission to the facts." Trial Counsel responded that Mother had realized, after talking to Trial Counsel during the recess, that the rule 34(e) plea would be taken "as an admission." Trial Counsel also revealed that Mother had attempted to alert Trial Counsel to the potential conflict by writing a note to her during the hearing.

¶7     The court denied Mother's oral motion to withdraw her plea, but it granted Mother leave to file a written motion to withdraw within thirty days, reasoning that Mother might determine that it was "okay" to accept the plea "after some more consideration as to what a [rule 34(e) plea] means." However, the court noted that it was "very careful" during the colloquy to confirm that Mother knew what she was doing and was acting voluntarily. With regard to the conflict of interest, the court asked Trial Counsel, "Other than the technical relationship, was there anything in your representation that was awry or that you look back on and say well I may have advised her differently had I . . . known of the conflict . . . ?" Trial Counsel responded that her advice "would be the same," pointing out that the conflict did not influence her because, at the time she rendered her advice, she did not know Mother and Mother's ex-brother-

in-law were, at one time, related. The court stated that even in the presence of the conflict, it did not observe anything "per se deficient in the way" Trial Counsel represented Mother. Mother agreed that there was nothing "specifically" wrong "in the way [Trial Counsel] represented" her in court but that she sought new counsel merely "because of the relationship that exists." The court granted Trial Counsel's motion to withdraw and appointed substitute counsel (Conflict Counsel), who entered an appearance for Mother approximately a month after the adjudication hearing.

¶8 About three weeks after the hearing, based on Mother's rule 34(e) admissions, the juvenile court entered an adjudication order that deemed the allegations in the petition to be true and found the Children to be abused, neglected, and dependent. The court made no express finding that the Children had been harmed, but it did include in its written decision a detailed account of the incident in which Mother choked one of the Children by the shirt collar at a counseling session and stated that its findings of abuse, neglect, and dependency were based on, among other things, that incident. The court ordered that a Child and Family Service Plan (the Plan) be prepared for the family and each child, set a primary permanency goal of reunification, and ordered DCFS to provide reunification services to Mother. The court's adjudication findings were used to generate the Plan, which required Mother to take those steps necessary to provide a home where the Children would be safe, nurtured, loved, and protected from any form of abuse or neglect. *See* Utah Code Ann. § 62A-4a-205(8)(d) (LexisNexis Supp. 2019) ("[C]hild and family plans shall address problems that . . . keep a child in placement . . . ."). The Plan also recommended that Mother continue to receive therapy, with a particular emphasis on developing parenting skills and developing a more positive view toward the Children. While the Plan addressed abuse in general terms, it did not mention any specific incident of abuse or set forth specific requirements to address the abuse.

¶9 Ultimately, Mother never filed a written motion to withdraw her rule 34(e) admissions. However, in the course of investigating the case, Conflict Counsel discovered allegedly exculpatory evidence that Mother now asserts demonstrates that she received ineffective assistance of counsel leading up to and during the adjudication hearing. Specifically, Conflict Counsel obtained a statement from the Children's babysitter, various police reports, and footage from a police body camera that Mother asserts Trial Counsel "would have found had she investigated" and that would have "negated Mother's most damning pleas" under rule 34(e). Mother appealed the court's adjudication order and subsequently filed a motion under rule 23B of the Utah Rules of Appellate Procedure seeking remand to the juvenile court to consider her claim of ineffective assistance. This court denied that motion but instructed Mother to address the need for remand in her appellate brief in accordance with *In re S.H.*, 2007 UT App 8, 155 P.3d 109.[3]

## ISSUES AND STANDARDS OF REVIEW

¶10 Mother first asserts that the juvenile court erred when it failed to make an express finding of harm before it concluded that the facts to which Mother admitted in her rule 34(e) plea met the statutory requirements of abuse. Because Mother did not preserve this issue below, she seeks review under the plain error doctrine. To establish plain error, Mother must show that "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is

---

3. Rule 23B (remand for findings necessary to adjudicate an ineffective assistance of counsel claim) does not apply in child welfare matters. *See* Utah R. App. P. 1(f) (stating that "Rules 9 and 23B do not apply" to child welfare proceedings). The concurring opinions of Judge Harris and Judge Orme address the remand procedure identified in *In re S.H.* as it intersects with the Utah Rules of Appellate Procedure. *See infra* ¶¶ 35–41.

a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *In re J.C.*, 2016 UT App 10, ¶ 12, 366 P.3d 867 (quotation simplified). "If any one of these requirements is not met, plain error is not established." *State v. Johnson*, 2017 UT 76, ¶ 20, 416 P.3d 443 (quotation simplified).

¶11 Mother also asks this court to determine whether Trial Counsel rendered ineffective assistance when she advised Mother to enter rule 34(e) admissions without adequately investigating the facts of the abuse allegations. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *In re S.S.*, 2015 UT App 230, ¶ 20, 360 P.3d 16 (quotation simplified).

ANALYSIS

I. Error of the Juvenile Court

¶12 Mother first asserts that the juvenile court erred when it found that she had abused the Children without making a "subsidiary finding that the abuse had caused the [Children] harm." To prevail on a claim of "plain error," Mother "must establish that (i) an error exists; (ii) the error should have been obvious to the juvenile court; and (iii) the error is harmful." *See In re T.M.*, 2003 UT App 191, ¶ 26, 73 P.3d 959 (quotation simplified). Under the circumstances of this case, Mother cannot establish that the court erred in finding that Mother abused at least one of the Children and therefore cannot establish that the court would have ordered a different child and family service plan or reached different conclusions about the primary permanency goal even if it had not found that Mother abused the Children with household items and caused them harm.

¶13 The juvenile court found that the Children were "abused, neglected, and dependent" and, in its adjudication order, included reference to allegations that Mother punished the Children with "a fork, a belt, a stick, and other items" and that

Mother collared one child and caused him to choke. Mother argues that simply stating that she punished the Children with objects and collared one child did not adequately support the court's finding of abuse. Instead, she contends that the juvenile court was required to enter findings detailing the specific harm she caused the Children, given that the definition of "abuse" of a child under Utah law includes "nonaccidental harm" and "threatened harm."[4] *See* Utah Code Ann. § 78A-6-105(1)(a)(i) (LexisNexis Supp. 2019). And "harm" includes "physical or developmental injury or damage." *Id.* § 78A-6-105(28).

¶14 As support for her assertion that the juvenile court committed an obvious error, Mother cites *In re K.T.*, 2017 UT 44, 424 P.3d 91, for the proposition that the court's order was insufficient and should have contained detailed findings of what harm Mother's actions caused the Children. *Id.* ¶ 9 ("To find abuse under Utah law, a court must find harm."). But *In re K.T.* does not require a court to make a specific finding of harm, labeled as such. Rather, it "allow[s] the juvenile court to infer harm" based on the evidence presented. *Id.* ¶ 14. Here, the facts

---

4. Utah law requires the juvenile court to conduct a disposition hearing "[i]f, at the adjudication hearing, the court finds, by clear and convincing evidence, that the allegations contained in the petition are true." Utah Code Ann. § 78A-6-311(1) (LexisNexis 2018). As our supreme court stated in *In re K.T.*, 2017 UT 44, 424 P.3d 91,

> The clear and convincing standard demands the introduction of evidence that makes "the existence of the disputed facts . . . very highly probable." [Applying this principle] to the case before the juvenile court, the State needed to present evidence that would allow the court to conclude that it was very highly probable that the children had been harmed.

*Id.* ¶ 9 n.3 (quotation simplified) (quoting *Lovett v. Continental Bank & Trust Co.*, 286 P.2d 1065, 1067 (Utah 1955)).

Mother admitted at the adjudication hearing, *see* Utah R. Juv. P. 34(e), were sufficient for the court to find that at least one of the Children was harmed by Mother's abusive behavior: While at a family counseling center, a witness observed Mother grab one child by the shirt collar with such force as to "restrict[] his ability to breathe and cause[] him to choke" as she forced his face into a corner. Mother continued to restrain the child even when the child told Mother that she was "hurting him" and that "he was having difficulty breathing." The "evidence of the effects" of Mother's actions allowed the juvenile court "to conclude that the [child] had been harmed." *See In re K.T.*, 2017 UT 44, ¶ 14. The child informed Mother not only that she was hurting him but also that he was having trouble breathing and showing signs of choking. At the very least, we can infer a finding of harm from the juvenile court's determination that Mother's action "restricted [the child's] ability to breathe and caused him to choke." *See* Utah Code Ann. § 76-5-109(1)(f)(ii) (LexisNexis 2017) ("'Serious physical injury' includes . . . any impediment of the breathing or the circulation of blood by application of pressure to the neck, throat, or chest, or by the obstruction of the nose or mouth, that is likely to produce a loss of consciousness . . . ."); *see also State v. Stettina*, 635 P.2d 75, 78 (Utah 1981) ("[M]aking it difficult [for a victim] to breathe . . . could reasonably place [a] victim in apprehension of bodily harm.").

¶15 Though Mother has submitted additional non-record evidence intended to challenge some of the other incidents of abuse described in the court's written decision, Mother has not offered much of a defense against the shirt-collar incident. She asserts only that the witness who reported the incident did not have a clear view of the events because Mother's body was between the witness and the child. But Mother has not alleged that the incident did not occur or that it did not result in the child choking.[5] Accordingly, the juvenile court had before it clear

---

5. Mother asserts that the juvenile court could have considered the collaring incident "as reasonable discipline or appropriate

(continued…)

and convincing evidence that established that Mother abused one of the Children and that the abuse caused that child harm.

¶16   With regard to the other allegations of abuse involving Mother punishing the "Children with a fork, a belt, a stick, and other items," however, the juvenile court did not infer, let alone articulate, a finding of harm related to any of those incidents. This lack of articulating a finding of harm is problematic. *See In re K.T.*, 2017 UT 44, ¶ 15 (stating that a finding that a parent "hit a child with another object" did not necessarily include an inference of harm, because the strike could have been delivered "lightly so that it did not cause" harm).

¶17   But even if we assume the court's findings of abuse with regard to the household items are incomplete, Mother cannot show that she was prejudiced by the court's error, because we have determined that evidence of the shirt-collar incident, standing alone, fully supported the court's abuse finding with regard to one of the Children, and on appeal Mother has not contested the court's neglect and dependency determination with regard to any of the Children. In this case, Mother cannot show a reasonable likelihood of a different outcome at the adjudication hearing even if the juvenile court had not included the household abuse facts in the adjudication order at all or if it

---

(…continued)

physical restraint that is precluded from the abuse definition." We find this argument unpersuasive. Restraining a young child in such a way as to choke him cannot be considered reasonable. *See* Utah Code Ann. § 76-5-109(1)(f)(ii) (LexisNexis 2017) ("'Serious physical injury' includes . . . any impediment of the breathing or the circulation of blood by application of pressure to the neck, throat, or chest, or by the obstruction of the nose or mouth, that is likely to produce a loss of consciousness . . . ."); *id.* § 76-2-401(2) (stating that the defense of justifiable conduct involving reasonable discipline of a minor "is not available if the offense charged involves causing . . . serious physical injury").

had determined that no abuse occurred during the household incidents. Even in that event, the Plan would have been the same, and the primary permanency goal entered by the court would still have been reunification. Accordingly, we cannot conclude that the juvenile court committed plain error, and we therefore affirm the court's adjudication order.

## II. Ineffective Assistance of Counsel

¶18    Mother also claims that Trial Counsel provided ineffective assistance in failing to conduct an adequate investigation into the facts of the abuse allegations against her. Specifically, Mother asserts that if Trial Counsel had investigated the State's allegations of abuse more diligently, Trial Counsel would have discovered exculpatory evidence that would have refuted the allegations of abuse involving punishment using household items, including a hammer, fork, belt, and stick. Thus, Mother asserts that Trial Counsel performed deficiently in advising her to enter admissions pursuant to rule 34(e) of the Utah Rules of Juvenile Procedure without first undertaking a sufficient investigation to uncover this exculpatory evidence.

¶19    To prevail on an ineffective assistance of counsel claim, Mother must show that (1) "counsel's performance was deficient" and (2) this "deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also In re E.H.*, 880 P.2d 11, 13 (Utah Ct. App. 1994) (stating that parents are entitled to effective assistance of counsel in child welfare proceedings and adopting "the *Strickland* test to determine a claim for ineffective assistance of counsel in proceedings involving termination of parental rights"). "Because failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim, we are free to address [Mother's] claims under either prong." *See Honie v. State*, 2014 UT 19, ¶ 31, 342 P.3d 182.

¶20    To show that Trial Counsel performed deficiently, Mother must overcome the strong presumption that Trial Counsel

rendered adequate assistance by persuading the court that "considering all the circumstances, counsel's acts or omissions were objectively unreasonable." *State v. Scott*, 2020 UT 13, ¶ 36, 462 P.3d 350. In other words, Mother must show that her "counsel rendered a deficient performance in some demonstrable manner, and that counsel's performance fell below an objective standard of reasonable professional judgment." *See State v. Martinez*, 2020 UT App 69, ¶ 29, 464 P.3d 1170 (quotation simplified), *petition for cert. filed*, July 20, 2020 (No. 20200556).

¶21 To establish prejudice, Mother must "demonstrate a reasonable probability that the outcome of . . . her case would have been different absent counsel's error. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." *Scott*, 2020 UT 13, ¶ 43 (quotation simplified).

¶22 Because the juvenile court's adjudication findings regarding allegations of abuse involving punishment using household items have two distinct applications, our examination of Mother's ineffective assistance claim is necessarily bifurcated with respect to the imminent use (namely, the court's disposition and the formulation of the Plan) and prospective impact (namely, possible impact on this child welfare proceeding and in the future) of the court's findings of abuse. Even if we assume that Trial Counsel performed deficiently in failing to fully investigate the facts supporting the allegations of abuse with household items, we are confident Mother was not prejudiced by the inclusion of those findings with regard to the development of and the requirements contained in the Plan. However, if Trial Counsel did fail to fully investigate the facts supporting the allegations of abuse and therefore performed deficiently in advising Mother to enter the rule 34(e) admissions, we are concerned that inclusion of those findings of abuse with household items in the adjudication order might prospectively prejudice Mother in her effort to successfully reunite with the Children in the future. Because this court does not consider new evidence on appeal, *see* Utah R. App. P. 11(a) ("The original

papers and exhibits filed in the trial court . . . shall constitute the record on appeal in all cases."), we must remand for an evidentiary hearing and direct the juvenile court to make factual findings regarding whether Trial Counsel performed deficiently by not fully investigating the allegations of abuse, and if so, whether Mother was prejudiced by following the advice of counsel to enter admissions rather than deny the allegations in the petition. We address the immediate and prospective application of the findings in turn.

A.    Application of Disputed Facts to the Court's Disposition and to the Plan

¶23    For the purpose of analyzing the effect of the juvenile court's adjudication and disposition, we assume, without deciding, that Trial Counsel performed deficiently in failing to investigate, resulting in Mother's rule 34(e) admissions and the court's finding that Mother abused the Children with certain household objects. However, as discussed above, even if all the facts surrounding abuse involving household objects are excluded (i.e., all abuse allegations except the shirt-collar incident), Mother was not prejudiced by the court's consideration of this evidence at the adjudication hearing, because the exclusion of these putative facts would not have changed the court's reunification goal or changed the Plan itself. Although Mother concedes that there was a basis for the finding of neglect against her, she argues that if she "just had a neglect finding—based on the findings of an unclean home and inadequate lunches—[her] future with [the Children] would be much less precarious."[6]

¶24    But Mother's evaluation is unpersuasive in several respects because it looks primarily to the long-term effects of the

---

6. As noted above, Mother does not challenge the findings of neglect or dependency reached by the juvenile court in its adjudication.

inclusion of disputed facts—an issue we address below, *see infra* ¶¶ 28–32—and does not focus on whether the disputed facts had an impact on the court's adjudication decision (for instance, on the court's disposition or on the requirements of the Plan). And the juvenile court's findings regarding the shirt-collar incident and other neglect which dictated the Plan's requirements are well-supported. Our analysis of the Plan suggests that the disputed abuse facts had little to no impact on its provisions. The Plan primarily focuses on interventions necessary to assist Mother in acquiring parenting and life skills so that she will be able to provide an environment in which the Children can be safe, loved, nurtured, and protected. The Plan also focuses on the need for Mother to continue personal therapy and to resolve the pending legal issues she faces. Indeed, the Plan explicitly states that Mother does not appear to be "an inherently violent or antisocial individual." Rather, the Plan characterizes her as lacking "the parenting skills needed to effectively manage [the Children's] emotional and behavioral issues."

¶25 Mother also downplays the finding of rather serious abuse related to the shirt-collar incident. Those provisions of the Plan that require Mother to provide an environment free from physical abuse could certainly have been necessitated by this incident alone. *See* Utah Code Ann. § 62A-4a-205(8)(h) (LexisNexis Supp. 2019) ("[A] child and family plan may only include requirements that . . . address findings made by the court . . . .") As addressed above, Mother has not offered much of a defense against this abuse allegation other than asserting that the witness who reported the incident did not have a clear view of the incident because Mother's body was between the witness and the child. Nowhere does Mother challenge that the incident occurred or that it resulted in the child choking. And because the finding of abuse related to the shirt-collar incident was considered in crafting the appropriate child and family service plan for this family to address the problems and needs of the whole family, Mother cannot show that the Plan would have differed or that the court would have entered a different

disposition had the court's adjudication order not contained findings regarding the other incidents of abuse.

¶26 Finally, the juvenile court rightly did not overlook that this family has had a history of DCFS involvement for nearly a decade. Four prior investigations were closed because DCFS was unable to locate the family. Two recent situations giving rise to DCFS intervention with this family were supported by administrative findings of non-supervision and emotional abuse involving two of the Children. The juvenile court was well aware of this history and recounted this involvement in the findings of its adjudication order.

¶27 In short, given the above circumstances, Mother was not prejudiced with respect to the immediate result of the adjudication as it pertains to the court's disposition and to the development of the Plan.

B.    Prospective Effects of the Disputed Facts

¶28 As to the continued impact of the adjudication order's abuse findings involving household items, however, we determine that Mother may well be prejudiced if those disputed facts are considered in whether Mother successfully complies with the requirements of the Plan and on any prospective application of that information. That is, the findings of abuse in the adjudication order create a benchmark for everything that happens in this child welfare case, and they will form the basis for whether Mother is able to comply with the requirements of the Plan going forward and whether she can be reunited with the Children. Thus, those particular abuse findings will continue to follow her throughout the pendency of this case and in any future case.[7]

---

7. We agree with Mother that this case seems to present a situation analogous to an incorrect presentence investigation

(continued…)

¶29    In the order denying her rule 23B motion, this court told Mother, "[N]othing in this order shall be construed as precluding [Mother] from addressing the need for remand or raising further argument under *In re S.H.*, 2007 UT App 8, 155 P.3d 109, in [her] brief." Pursuant to our direction, Mother attached extra-record evidence to her appellate brief suggesting that the Children's reports of the abuse, especially with regard to the use of household items, may have been exaggerated, if not false.

¶30    In *In re S.H.*, a mother raised a claim of ineffective assistance of counsel, arguing that her attorney stipulated to allegations without the mother being present and without her consent. 2007 UT App 8, ¶ 10. On learning of her attorney's conduct, the mother challenged the unauthorized admissions by filing an affidavit detailing a claim of ineffective assistance of counsel in conjunction with her petition for appeal. *Id.* ¶ 15. This court reasoned that because the admissions stipulated by her attorney likely prejudiced the mother, remand was necessary. *Id.* ¶¶ 16–20. Because "the procedural rules for child

---

(…continued)

report (PSI) in the criminal context. A PSI can contain information about a criminal defendant's family, education, health, criminal record, and employment history and will follow a defendant "through the justice system." *See State v. Irey*, 2017 UT App 178, ¶ 5, 405 P.3d 876 (quotation simplified). Though incorrect information contained in a PSI will not necessarily require resentencing if not appropriately corrected, this court will often order limited remand to the district court to resolve any contested information contained in the PSI. *See State v. Post*, 2015 UT App 162, ¶ 11 n.7, 354 P.3d 810 ("Even where inaccuracies in a PSI do not affect a defendant's sentence, it is necessary that the defendant's objections be resolved on the record because the statements in a defendant's PSI may be utilized in future settings, such as parole hearings." (quotation simplified)).

welfare appeals clearly contemplate claims for ineffective assistance of counsel," "we remand[ed] to the juvenile court for an evidentiary hearing and direct[ed] the juvenile court to make factual findings regarding [the mother's] ineffective assistance of counsel claim." *Id.* ¶ 16; *see also* Utah R. App. P. 55(b) (explaining that claims of ineffective assistance of counsel should be raised on appeal in juvenile cases).

¶31 Here, Mother contends that Trial Counsel "performed deficiently and unreasonably when she did not investigate the case." To that end, Mother has attached extra-record evidence uncovered by Conflict Counsel to her appellate brief. This evidence includes (1) a statement from a babysitter that may exonerate Mother, (2) police reports from February 2019 in which all the Children but one denied abuse by Mother, and (3) a transcript of the conversation recorded by a police body camera at the time of Mother's arrest that Mother contends shows the Children were removed from her care not for abuse but because a DCFS worker thought Mother was "psycho." If this evidence proves credible and was reasonably available before Trial Counsel advised Mother to enter admissions to the alleged abuse involving household items, it could support a determination that Mother received ineffective assistance because such information might undermine the propriety of Trial Counsel's advice that Mother not contest the factual findings presented by the State.

¶32 Because we do not consider extra-record evidence on appeal, "the juvenile court is in a far better position to evaluate the evidence than an appellate court." *In re K.B.*, 2017 UT App 210, ¶ 14, 407 P.3d 1084 (quotation simplified). We thus remand to the juvenile court to conduct the procedure outlined in *In re S.H.* to make a determination of whether deficient performance on the part of Trial Counsel induced Mother to enter the disputed admissions under rule 34(e). And "while we do not conclude that Mother's counsel was ineffective, we note that should the juvenile court find that Mother's counsel failed to" adequately investigate the case and wrongly advised Mother to

enter a rule 34(e) plea to the petition rather than contest the allegations, then such failures may well require the juvenile court to issue a revised adjudication order as it pertains to the factual findings on the alleged abuse involving household items. *See In re S.H.*, 2007 UT App 8, ¶ 17.

CONCLUSION

¶33 We conclude that Mother was not prejudiced by any error of the juvenile court in not entering specific findings of harm or any deficiency by Trial Counsel insofar as it concerns the court's disposition and formulation of the Plan. However, because Mother may be prejudiced in her ability to comply with the Plan and because extra-record evidence indicates that Trial Counsel may have failed to adequately investigate the allegations in the petition, we remand to the juvenile court to conduct an evidentiary hearing regarding Mother's allegations of ineffective assistance with regard to the findings of fact in the adjudication order related to abuse involving household items.

¶34 Affirmed in part and remanded.

――――――――

HARRIS, Judge (concurring):

¶35 I concur in the lead opinion without reservation. I write separately to expand on the lead opinion's observation, *see supra* note 3, that rule 23B of the Utah Rules of Appellate Procedure does not apply in child welfare cases, and to wonder aloud about the extent to which our opinion in *In re S.H.*, 2007 UT App 8, 155 P.3d 109, is in conflict with the text of rule 1 of the Utah Rules of Appellate Procedure. That rule states, in no uncertain terms, that "Rules 9 and 23B do not apply" in child welfare proceedings. *See* Utah R. App. P. 1(f). Rule 23B, of course, is the rule that creates a procedure by which litigants can seek leave to submit extra-record material in support of an appellate claim of

ineffective assistance of counsel. *See State v. Litherland*, 2000 UT 76, ¶¶ 13–14, 12 P.3d 92 (stating that rule 23B "was specifically designed to address" "the dilemma created by an inadequate record of counsel's ineffectiveness"). On its face, the language of rule 1(f) makes plain that our appellate rules afford no mechanism, in child welfare cases, for appellate litigants to introduce extra-record evidence in support of claims that their trial counsel was ineffective; there is at least an implication that, under the rules, such litigants may use only record evidence to support those claims.[8]

¶36    Despite the language of rule 1(f), which was in effect at the time, *see* Utah R. App. P. 1(f) (2006), our opinion in *In re S.H.* went ahead and allowed a party to obtain a rule 23B-like remand so that the juvenile court could consider certain extra-record evidence, including an affidavit, that the litigant filed for the first time on appeal. *See* 2007 UT App 8, ¶¶ 15–16. We stated that, "[b]y not allowing [the litigant] to submit record evidence

─────────────

8. The drafters of rule 1(f) did not explain the rationale for making rule 23B inapplicable in child welfare proceedings, and—given that we must base our decisions on the text of the rule, and not on our own notions of what the drafters might have intended, *see, e.g.*, *Hughes Gen. Contractors, Inc. v. Utah Labor Comm'n*, 2014 UT 3, ¶ 29, 322 P.3d 712 (stating that "the interpretive function for us is not to divine and implement the statutory purpose, broadly defined," but instead is to "construe its language")—their unstated rationale is not directly relevant anyway. But it does not take much imagination to envision a reason why the drafters might have wanted to limit child welfare litigants to record evidence in making claims for ineffective assistance: rule 23B remand proceedings often take quite a bit of time, and speed is often at a premium in child welfare cases. *See In re K.C.*, 2015 UT 92, ¶ 27, 362 P.3d 1248 (stating that "[c]hildren have an interest in permanency and stability," and that "[t]he expeditious resolution of a termination proceeding may well be of paramount importance").

regarding her ineffective assistance of counsel claim, we would effectively deny [the litigant's] right to raise that claim." *Id.* ¶ 16. We did not explain our authority for taking action in apparent contravention of rule, and we did not set forth any parameters (such as the deadlines and procedures set out in the actual text of rule 23B) advising litigants about how to go about availing themselves of the newly-announced procedural mechanism.

¶37 Since *In re S.H.* was decided, we have treated that opinion as creating a procedural mechanism, akin to rule 23B but not exactly like rule 23B, that allows litigants in child welfare proceedings to submit extra-record evidence in support of appellate claims of ineffective assistance. Typical is the order we issued earlier in this case, denying Mother's rule 23B motion (because the rule does not apply) but allowing her to do essentially the same thing rule 23B would have allowed her to do, if it applied, by advising her to proceed pursuant to *In re S.H.*

¶38 I take no issue with the majority's application of *In re S.H.* in this case, because it is our precedent, and no party to this case has asked us to reexamine it. *See State v. Legg*, 2018 UT 12, ¶ 11, 417 P.3d 592 ("*Stare decisis* mandates that one panel of the court of appeals defer to the decision of a prior panel."). But it certainly appears to me as though *In re S.H.* might merit reexamination in an appropriate case where, after full briefing and argument, we might analyze whether that case is in harmony with our rules of appellate procedure and, if not, whether there exists a valid basis—for instance, through inherent judicial power, as Judge Orme suggests, *see infra* ¶ 41—for our court to create such a mechanism on its own.

—————

ORME, Judge (concurring):

¶39 I concur in the lead opinion. I write separately to offer a counterpoint to Judge Harris's concurring opinion, in which he questions the basis on which we have remanded cases such as

this one to vindicate a parent's right to the effective assistance of counsel.

¶40    While it is true that *In re S.H.*, 2007 UT App 8, 155 P.3d 109, does not elaborate on the basis for the authority by which we permitted a remand mechanism in child welfare cases, arguably at odds with rule 1(f) of the Utah Rules of Appellate Procedure,[9] I do not believe that this is problematic for two reasons—three if one includes the point made in footnote 9. First, parents involved in parental termination proceedings have an unquestioned right to the effective assistance of counsel, *see In re E.H.*, 880 P.2d 11, 13 (Utah Ct. App. 1994), and it seems obvious that to actualize that right in some termination cases, a remand procedure not unlike rule 23B for criminal cases must exist. Otherwise, how could this important issue come before us in cases such as this one, where the record would not allow us to determine whether a parent received the effective assistance of counsel? Because there is a right to the effective assistance of counsel during a parental-rights-termination proceeding, there must be a procedure by which we can assess whether that right was violated when such a claim is asserted and substantiated but the critical information is not part of the record on appeal. Without such a procedure, this "important right would ring hollow in the halls of justice." *Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997). I suspect that this realization, rather than some oversight or laxity in advocacy, explains why neither the Attorney General nor the Office of Guardian ad

---

9. I do not read as much into rule 1(f) of the Utah Rules of Appellate Procedure as Judge Harris does. As concerns rule 23B, it merely states the obvious. Rule 23B is, by its own terms, limited to criminal cases. *See* Utah R. App. P. 23B(a). Parental-rights-termination cases are not criminal cases. With or without rule 1(f), rule 23B would not apply to termination cases or any other civil proceeding.

Litem has, in this case or in any other in the thirteen years since this court issued *In re S.H.*, seen fit to question it.[10]

¶41 Second, although our rules of appellate procedure do not explicitly allow us to remand a termination case to develop a record of counsel's claimed ineffective assistance, this is not dispositive of our ability to do so. In my view, we can do so in

---

10. It is important to note that before the adoption of rule 23B, when we were confronted with this issue in criminal cases and did not remand the case to have the record developed on the claimed ineffective assistance, we were quick to point out that a defendant had the ability to vindicate his or her right to the effective assistance of counsel through a post-conviction petition. *See, e.g.*, *State v. Cummins*, 839 P.2d 848, 858–59 (Utah Ct. App. 1992) ("[W]hen the trial record is inadequate to permit a determination that defendant's case has clearly been prejudiced by defense counsel's deficient performance at trial, defendant is precluded from raising his ineffective assistance claim on appeal and must seek relief through post-conviction or habeas corpus proceedings."); *State v. Montes*, 804 P.2d 543, 546 n.3 (Utah Ct. App. 1991) ("To the extent counsel's failure to raise these issues might be taken as ineffective assistance, if [the defendant] pursues his claims on habeas corpus, that will be the appropriate time to develop an evidentiary record addressing these issues."). *See also State v. Litherland*, 2000 UT 76, ¶ 13, 12 P.3d 92 ("In short, the dilemma of an inadequate record created a regime that tended to channel ineffectiveness claims into the habeas arena, where the defendant faced numerous burdens not present on direct appeal."). But in the context of parental-rights-termination proceedings, there is no similar avenue, and if we did not have a mechanism to remand to develop the record on direct appeal, parents would have no meaningful remedy by which to vindicate their right to the effective assistance of counsel.

the sound exercise of our inherent power.[11] *See United States v. Calandra*, 414 U.S. 338, 348 (1974) (describing the exclusionary rule as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect"). Thus, *In re S.H.* is best understood as an appropriate exercise of our inherent power to improvise such procedures as may be necessary to resolve important issues such as a parent's constitutional right to the effective assistance of counsel, and in doing so we avoid burdening parents "with a catch-22 unique to claims of ineffectiveness of trial counsel," when "counsel's ineffectiveness may have caused, exacerbated, or contributed to the record deficiencies," *State v. Litherland*, 2000 UT 76, ¶ 12, 12 P.3d 92, over which the affected parent had no control.

––––––––––

11. Ultimately, I am not convinced that rule 23B was even necessary to give appellate courts the power in criminal cases to supplement the record on appeal to get to the bottom of a constitutionally based claim such as the ineffective assistance of counsel. In my view, rule 23B came into existence not because such a rule was strictly necessary to create that opportunity but to regularize and refine it by setting standards, deadlines, and procedures governing such remands. And as previously noted, there was not a compelling need for the appellate courts to exercise their inherent authority and improvise such a procedure in the criminal context before rule 23B came into existence because criminal defendants had the opportunity to pursue such claims and develop the necessary evidentiary record in a post-conviction proceeding. But there is no analogous avenue available to parents whose parental rights have been terminated.