**2022 UT App 124**

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF D.R.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

L.L.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Opinion
No. 20210898-CA
Filed November 10, 2022

Seventh District Juvenile Court, Moab Department
The Honorable Mary L. Manley
No. 1196258

Gregory W. Stevens, Attorney for Appellant

Sean D. Reyes, Carol L.C. Verdoia, and John M.
Peterson, Attorneys for Appellee

Martha Pierce, Guardian ad Litem

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGE RYAN D. TENNEY and SENIOR JUDGE KATE APPLEBY
concurred.[1]

CHRISTIANSEN FORSTER, Judge:

¶1     The State took custody of L.L.'s (Mother) eight-year-old
daughter (Child) and established a Child and Family Plan with a
goal of reunification. But after approximately four months, the
juvenile court terminated reunification services due to Mother's

---

1. Senior Judge Kate Appleby sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(7).

near-total failure to complete the requirements of the Child and Family Plan. Subsequently, Mother requested that the court reinstate reunification services on the ground that she should have been given more time as an accommodation under the Americans with Disabilities Act (the ADA). The juvenile court denied Mother's request and eventually terminated her parental rights.

¶2     We are asked to determine whether the juvenile court's ruling violated Mother's rights under the ADA and whether her trial counsel performed ineffectively by failing to obtain a successful ruling on her motion. Because we determine that granting Mother more time would not have allowed her to complete reunification services and that the juvenile court had no affirmative obligation to craft an accommodation that Mother did not request, we affirm the court's ruling on her motion. Moreover, because we conclude that Mother's claim of ineffective assistance of counsel is speculative, we reject that claim as well.

BACKGROUND

¶3     In March 2021, the State took custody of Child. The juvenile court found Child to be "neglected and/or dependent." The Department of Child and Family Services (DCFS) set a permanency goal of reunification and established a Child and Family Plan, which required Mother to complete a mental health and substance abuse evaluation; participate in random drug testing; not abuse illegal, prescription, or non-prescription drugs; complete any recommended substance abuse and mental health treatment; acquire appropriate housing; complete a domestic violence assessment and complete any recommended treatment; and not allow Child to be exposed to domestic violence.

¶4     In early July, however, DCFS requested that the court terminate reunification services. Mother resisted, reporting that

she faced challenges in completing the requirements of the reunification plan because she faced "technology issues and issues with her disability." She explained that she had obtained a car and intended to move back to Utah from Colorado to participate in reunification services. Mother therefore requested "more time to work [on] reunification services." Mother did not specifically request accommodation under the ADA.

¶5     The court found that Mother had made minimal progress on the reunification plan. She had moved to Colorado, "despite being warned this would make services difficult." She had missed twenty-one drug tests, and of the three she completed, all were positive for methamphetamine. Mother had not obtained stable housing and had not completed any of the ordered assessments. She missed three video visits and two in-person visits with Child, including a visit on Child's birthday. Moreover, she had continued to have contact with Child's father, despite claiming not to know where he was, and she had been involved in a new domestic violence incident with him. The court therefore set the matter for a permanency hearing on July 22, 2021.

¶6     Following the permanency hearing, the court found that Mother had not taken any additional drug tests since the permanency hearing was scheduled, missing six tests in the two-week period; that she had missed an additional visit with Child; and that she had not actually moved to Utah as she indicated she would. Additionally, Mother had received a new drug possession charge in Colorado. The court found that Mother had "failed to comply with the court approved plan in whole or in part" and that this failure was the result, not of limitations beyond her control, but of her "unwillingness to engage in the services intended to address" the underlying issues that led to Child's removal. Based on these findings, the court concluded that "[a]n additional 90 days is not likely to result in achievement of the objectives of the treatment plan for" Mother and that "provision of further reunification efforts is not reasonable." The court therefore

changed Child's permanency goal to adoption and terminated reunification services.

¶7    A month later, Mother filed a motion asking the court to hold a new permanency hearing or modify its order terminating reunification services. She argued that she had not been granted reasonable accommodation under the ADA with respect to reunification services. Mother asserted that she suffered from a brain arteriovenous malformation (AVM), which she claimed "[t]he court and DCFS have been aware [of] since the onset of this case." She argued that her disability makes it difficult "to accomplish things as quickly as other people" and that she "required additional time to access the reunification services with her disabilities to afford her the same opportunities as any non-disabled individual."

¶8    The court rejected Mother's argument because it concluded that although she had "established a disability," she had not shown that her "disability qualifies her for reasonable accommodations" or that her requested accommodation of more time was reasonable. Accordingly, the court denied her request that it reinstate reunification services. Following a subsequent termination trial, which Mother did not attend, the juvenile court terminated Mother's parental rights. Mother now appeals.

ISSUES AND STANDARDS OF REVIEW

¶9    First, Mother argues that the juvenile court exceeded its discretion in denying her motion to reinstate reunification services on ADA grounds.[2] "Trial courts are in the best position

---

2. The parties and the juvenile court engaged in extensive analysis of whether DCFS and the court were obligated to provide Mother with ADA accommodations, based on their general awareness

(continued…)

to evaluate the credibility of witnesses, the parent's level of participation in reunification services, and whether services were appropriately tailored to remedy the problems that led to the child's removal." *In re K.F.*, 2009 UT 4, ¶ 52, 201 P.3d 985. "Thus, appellate courts defer to juvenile courts on matters of credibility, and juvenile courts have broad discretion in determining whether reasonable reunification efforts were made. Accordingly, absent a demonstration that the determination was clearly in error, we will not disturb the determination." *Id.* (quotation simplified).

¶10    Second, Mother argues that if we affirm the juvenile court's ruling, then we must necessarily determine that her trial counsel was ineffective for failing to raise an adequate argument in support of her ADA claim. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law," *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162, which we review for correctness.

---

that Mother suffered from a disability, prior to the time she filed her motion specifically invoking the ADA. However, Mother appears to have abandoned that argument on appeal. *See generally In re B.A.*, 2017 UT App 202, ¶¶ 5–8, 407 P.3d 1053 (explaining that "vague claims of a disability" are insufficient to put DCFS and the juvenile court on notice that the ADA applies). Instead, she asserts that "once [she] invoked the ADA by way of her Motion under Rule 59(a) after the permanency hearing, DCFS and the juvenile court were charged with identifying any modifications to the reunification plan that might be reasonable." Thus, on appeal, we consider only whether the ADA required the juvenile court to reinstate reunification services following Mother's motion invoking the ADA, not whether the ADA precluded the juvenile court from terminating reunification services at the permanency hearing.

## ANALYSIS

### I. The juvenile court did not exceed its discretion in rejecting Mother's ADA argument.

¶11    The juvenile court rejected Mother's ADA claim on the ground that she had not established she was a "qualified individual with a disability" under the ADA because she could not demonstrate that there was a reasonable accommodation that would allow her to successfully participate in reunification services. A qualified individual is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2); *see also In re K.C.*, 2015 UT 92, ¶ 22, 362 P.3d 1248.

¶12    The only accommodation Mother requested was "additional time to access the reunification services with her disabilities to afford her the same opportunities as any non-disabled individual." We agree with the juvenile court that without any evidence that Mother had even begun to progress on the reunification plan, she could not show that she was capable of completing reunification services even with the additional time she requested. As the juvenile court explained, "[Mother] is asking for more time to begin to do all of the things that she has failed to start in more than four months. Her lack of engagement, and lack of parental interest in services, does not support a different outcome." "There is no additional reasonable accommodation that could have been provided to [Mother] without her engagement in the services provided. [Mother's] refusal to engage in any services balanced against [Child's] best interests for permanency, make the request for additional time an unreasonable accommodation because it would create a hardship in providing permanency for [Child] when there is no indication it would net a different result."

¶13    Mother nevertheless suggests that there may have been other appropriate accommodations and that the juvenile court and DCFS had an "affirmative obligation" to "explore reasonable accommodations" and "identify[] any modifications to the reunification plan that might be reasonable." Relying on *In re K.C.*, 2015 UT 92, 362 P.3d 1248, she suggests that she had no responsibility to request any specific modification and that it was the responsibility of DCFS and the juvenile court to independently research her condition and identify accommodations that might have helped her to participate in reunification services. We can see how some isolated language from *In re K.C.* might be interpreted this way, but reading the case as a whole, it is apparent to us that the supreme court did not intend the result advanced by Mother here. Although the court stated that "the juvenile court is charged . . . with identifying any modifications to the reunification plan that might be reasonable," *id.* ¶ 27 (emphasis omitted), it also clearly expected the parent challenging a juvenile court's rejection of an ADA claim to identify the "specific modification that [the parent] requested that was denied by the court," *id.* ¶ 30. This court expressed a similar expectation in *In re C.C.*, 2017 UT App 134, 402 P.3d 17, when it approved the juvenile court's rejection of an ADA defense where the mother had not identified "any specific accommodation . . . that was denied or not provided by DCFS or by the Court." *Id.* ¶ 31 (quotation simplified). Thus, we do not read *In re K.C.* as imposing an "affirmative obligation" on the juvenile court to make a parent's ADA arguments for them by identifying potential reasonable accommodations that the parent did not request.

¶14    Moreover, we do not agree that the ADA can be reasonably read to impose such an obligation. Juvenile court judges do not have the medical background to understand and assess the effects of an illness or disability on a parent's ability to complete reunification services without being presented with specific evidence. And even if they did, individual victims of an illness or

disability may experience such a variety of symptoms that a mere diagnosis does not provide a sufficient basis for assessing the accommodations an individual with that diagnosis might need. Thus, we agree with the State and the guardian ad litem that the burden must be on the individual requesting accommodation under the ADA to present the court with information regarding their disability, how it affects them, and the accommodations that would allow them to participate in reunification services.

¶15    For these reasons, the juvenile court did not err in denying Mother's request to reinstate reunification services.

## II. Mother has not demonstrated that she received ineffective assistance of counsel.

¶16    Mother next argues that if we "conclude that there was insufficient argument and evidence . . . to support [Mother's] claim that DCFS and the juvenile court had failed to comply with the ADA, then we also have to conclude that trial counsel was ineffective." To succeed on a claim of ineffective assistance of counsel, Mother must demonstrate both (1) that counsel's performance was deficient and (2) that she suffered prejudice as a result of counsel's deficient performance. *See In re C.M.R.*, 2020 UT App 114, ¶ 19, 473 P.3d 184.

¶17    Mother claims that even though she did not appear at the termination trial, counsel should have called Mother's father, mother, and brother, as well as an expert witness, to testify about her disability. However, the record does not indicate what the testimony of any of these individuals would have been. Without knowing what additional evidence counsel could have presented regarding Mother's disability, any allegation that counsel was ineffective is purely speculative.

¶18    Mother asks that we remand this case for an evidentiary hearing on her ineffective assistance of counsel claim. *See generally*

*In re S.H.*, 2007 UT App 8, ¶ 16, 155 P.3d 109 (determining that this court has the authority to remand an appeal from juvenile court to allow the juvenile court to make factual findings regarding an ineffective assistance of counsel claim). However, as such a remand is analogous to a remand under rule 23B of the Utah Rules of Appellate Procedure, *see In re C.M.R.*, 2020 UT App 114, ¶ 37 (Harris, J., concurring), it requires a "nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective. And to support its contentions, the party must submit affidavits that demonstrate both the deficient performance by counsel and the resulting prejudice to the defendant," *State v. Griffin*, 2015 UT 18, ¶ 17, 441 P.3d 1166 (quotation simplified); *cf. In re C.M.R.*, 2020 UT App 114, ¶ 31 (stating that the mother "attached extra-record evidence uncovered by [counsel] to her appellate brief" in support of her request for remand on her ineffective assistance claim); *In re S.H.*, 2007 UT App 8, ¶ 15 (stating that the mother filed an affidavit detailing evidence to support her ineffective assistance claim). Mother has provided us with no affidavits or other extra-record evidence indicating that her argument that counsel could have obtained better evidence in support of her ADA claim is anything but speculative. We therefore deny her request for remand.

¶19    Moreover, we are not convinced that additional evidence regarding Mother's limitations would have altered the court's denial of her request for accommodation. As explained, Mother was required to show that additional time or any other accommodation would enable her to complete the objectives of the reunification plan. *See In re K.C.*, 2015 UT 92, ¶ 22, 362 P.3d 1248. Given Mother's unwillingness to participate in services during the four months when reunification services were provided, it is unlikely Mother could show that she was capable of making meaningful progress, regardless of any accommodation she received. As our supreme court stated in *In*

*re K.C.*, "We cannot fault the juvenile court for concluding that any further modifications would be unreasonable." *Id.* ¶ 29.

CONCLUSION

¶20 We agree with the juvenile court that Mother was not a qualified individual under the ADA because she did not identify any reasonable accommodation that would have allowed her to successfully participate in reunification services. Moreover, the court did not have an affirmative obligation to explore potential ADA accommodations that Mother had not requested. Finally, because there is no record evidence indicating that counsel failed to make arguments that would have allowed Mother to succeed on her ADA claim, she cannot establish that she received ineffective assistance of counsel. Accordingly, we affirm.

———————